UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **WARREN WOODY,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | )   **CV 04-B-2441-M** |
| | ) |
| **FONTAINE SPECIALIZED, INC.,** | ) |
| | ) |
|    **Defendant.** | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 28.) Plaintiff Warren Woody has sued his former employer, defendant Fontaine Specialized, Inc., alleging that defendant discriminated against him on the basis of his race and that it retaliated against him for filing a charge of discrimination with the EEOC and a lawsuit in this court. Upon consideration of the record, the evidence and argument submitted by defendant,[1] and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 28), is due to be granted.

## I. SUMMARY JUDGMENT STANDARD

The Eleventh Circuit has held, "Where 'the adverse party does not respond, summary judgment, *if appropriate*, shall be entered against the adverse party.' Thus, summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004)(quoting Fed. R. Civ.

---

[1]Plaintiff did not file a response to defendant's Motion for Summary Judgment.

P. 56(e))(emphasis in original). Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Plaintiff began working for defendant on January 18, 1998. *Woody v. Fountain Specialized, Inc.*, CV 01-AR-1029-M, doc. 31 at 1. On August 17, 2000, he filed a charge with the Equal Employment Opportunity Commission alleging discriminatory work assignments and pay. (Doc. 28, Ex. 5, ex. 8.) On April 6, 2001, plaintiff filed another charge with the EEOC alleging race discrimination and retaliation. (*Id.*, ex. 9.) In this charge, he

alleged that he had been subjected to harassment and verbal abuse, that his work had been scrutinized more closely than that of others, and that he had been instructed to go outside during a lightning storm. (*Id.*)

Several weeks after he filed his second EEOC charge, plaintiff filed an action against defendant, contending that he was subject to discrimination on the basis of his race and retaliation. *Woody v. Fountain Specialized, Inc.*, CV 01-AR-1029-M, doc. 1. The court granted summary judgment and dismissed plaintiff's action. *Id.*, doc. 32. Plaintiff continued to work for defendant throughout his first case.

On October 31, 2002, while driving a forklift, plaintiff backed into a ladder on which Donnie Bryant was standing. (Doc. 28, Ex. 3 ¶ 3.) Woody struck the ladder so hard that Bryant had to hold on to avoid falling. (*Id.*) However, Woody responded with only a grin, and he moved away without comment. (*Id.* ¶ 4.) Woody was suspended pending an investigation into the incident. (*Id.*, Ex. 5, ex. 4.) After investigation, plaintiff's forklift operator license was revoked and he was transferred to a Cleaner position. (*Id.*, ex. 8; *id*, Ex. 1 ¶15.) This transfer resulted in a loss of wages because the new position was compensated at a lower rate. (*Id.*, Ex. 1 ¶ 15.)

The following year, Woody bid on and was awarded a Material Handler position that would have increased his pay rate by 65 cents per hour. (*Id.* ¶ 13.) However, he declined the promotion. (*Id.*; *see also id.*, Ex. 5, ex. 2.)

3

On December 5, 2003, plaintiff filed his third EEOC charge claiming race discrimination and retaliation for having filed the previous charge. (*Id*., Ex. 5, ex. 1.)

Plaintiff returned to the position of Material Handler and Forklift Operation on February 9, 2004. (*Id*. ¶ 8.) On his first day, he had an accident. (*Id*.) Twice he struck the parked trailer with the forklift. (*Id*.) Based on this incident, defendant again removed plaintiff from the Material Handler position and revoked his forklift license. (*Id*.; *see also id*., Ex. 5, ex. 8.) Plaintiff returned to the Cleaner position. (*Id*., Ex. 5, ex. 8.)

In May 2004, plaintiff moved to a position in the Paint Department. (*Id*.) After approximately six weeks of training, plaintiff's job grade was raised and he received a raise. (*Id*., Ex. 2, ¶ 4.)

On August 10, 2004, plaintiff and Frank Barnes, a white employee, painted a trailer. (*Id*. ¶ 5.) Sam Boyd, plaintiff's supervisor, found the paint job on the trailer was "not up to acceptable standards." (*Id*.) Plaintiff and Barnes each received a verbal warning and were informed that further mistakes could result in discipline, including termination. (*Id*.; *see id*., Ex. 5, ex. 14.) On August 11, 2004, Boyd discovered another improperly painted trailer. (*Id*. ¶ 6.) Boyd testified, "This [was] the worst paint job I have seen in my three years experience as a supervisor of the paint department. It contain[ed] not only paint runs, but also had many areas where the primer had bled through producing an unacceptable finish." (*Id*.) Further, he testified, "The trailer had to be removed from the production line which meant it stopped production of all trailers that followed it on the line." (*Id*.)

4

Boyd and other members of management conferred and agreed that plaintiff and Barnes would be suspended pending investigation. (*Id.*, Ex. 1 ¶ 9.) On August 16, 2004, defendant discharged both plaintiff and Barnes "because inspection of the paint job on August 11 indicated a complete disregard for proper painting procedures, resulting in the time and expense of several days to remove the paint and repaint the trailer." (*Id.*)

On September 9, 2004, plaintiff filed a charge with the EEOC alleging that he was discharged because of his race and in retaliation for having filed a previous charge of discrimination. (Doc. 4, Ex.) In this charge he stated:

> I was assigned to the least experienced painter as a trainer, which I objected to. I was suspended on August 11, 2004 and I was discharged on August 16, 2004.
>
> Max Dover, White Human Resource Director, told me that I was being discharged for poor job performance, which I deny.

(*Id.*)

On August 9, 2004, plaintiff filed the instant action. In his Amended Complaint, filed September 21, 2004, he alleges the following claims:

Count I:  Race Discrimination – Terms and Conditions

Count II:  Race Discrimination in Wages[2]

Count III:  Race Discrimination in Discipline

---

[2]Count II of plaintiff's Amended Complaint is entitled "Race Discrimination in Promotion, Assignment, and Wages." (Doc. 4 at 4.) However, the allegations in Count II allege only discrimination with regard to his compensation. (*Id.* ¶¶ 19-23.)

Count IV: Retaliation

(Doc. 4.)

### III. DISCUSSION

Plaintiff alleges that defendant discriminated against him on the basis of race, African-American, and in retaliation for complaining about race discrimination. The record contains no direct evidence of discrimination or retaliation; therefore, this is a circumstantial evidence case. The circumstantial evidence standards are well established:

> *McDonnell Douglas*[3] and subsequent decisions have established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases. First, the plaintiff must establish a prima facie case of discrimination. . . . The burden [then] shift[s] to [the defendant] to produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. This burden is one of production, not persuasion; it can involve no credibility assessment. [When the defendant offers] admissible evidence sufficient for the trier of fact to conclude that [the plaintiff] was fired [for a legitimate, nondiscriminatory reason], the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s], and the sole remaining issue [is] discrimination vel non . . . .
>
> Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. And in attempting to satisfy this burden, the plaintiff – once the employer produces sufficient evidence to support a nondiscriminatory explanation for its decision – must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is

---

[3] 411 U.S. 792 (1973).

> unworthy of credence. Moreover, although the presumption of discrimination drops out of the picture once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual.

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 142-43 (2000)(internal citations and quotations omitted, footnote added). The *McDonnell Douglas* framework applies to retaliation claims. *Whatley v. Metropolitan Atlanta Rapid Transit Authority*, 632 F.2d 1325 1327-28 (5th Cir. Unit B 1980)("The issue of retaliation for participation in an employment discrimination charge is governed by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) . . . .)

**A. TERMS AND CONDITIONS**

Plaintiff alleges defendant took the following job actions against him on the basis of his race:

1. demotion from forklift position to a cleaning position because of an accident while similarly situated white employees were not demoted, (*id.* ¶ 7);

2. assignment to work in the sun in June and July of 2003, (*id.* ¶ 8);

3. told to return to work from a smoke break or a coffee break when similarly situated white employees were not told to return to work, (*id.* ¶¶ 12-13);

4. assigned a painting trainer with less experience than the trainers of white employees, (*id.* ¶ 14);

  5. monitored more closely by management than similarly situated white employees, (*id* ¶ 16.)

  Defendant contends that, except for his alleged demotion, plaintiff's alleged adverse actions are not actionable adverse employment actions. The court agrees.

  The Eleventh Circuit has held that an adverse employment action is an essential element of claims of discrimination and retaliation. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001). "[T]o prove [an] adverse employment action . . . an employee must show a ***serious and material*** change in the terms, conditions, or privileges of employment," and that "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*. at 1239 (emphasis in original)..

  Whether an employer's decision affecting an employee constitutes an actionable adverse employment action turns on whether a reasonable person would have found the decision to be adverse to his employment. The Eleventh Circuit has held that a plaintiff must show that "a reasonable person in [plaintiff's] position would have found [the decision] to be adverse under all the facts and circumstances. *Doe v. DeKalb County School District*, 145 F.3d 1441, 1453 (11th Cir. 1998). Among the facts and circumstances affecting whether the change is considered "adverse" are whether the change results in "lesser pay, responsibilities or prestige," and whether the change would "impede an employee's professional growth or advancement." *Id*. at 1452.

The length of plaintiff's breaks, his work assignment in the sun, his assignment to a trainer with less experience, and monitoring by management are not actionable adverse employment actions. Plaintiff has presented nothing in opposition to defendant's Motion for Summary Judgment. Therefore, the court finds that there are no disputed issues of fact and that defendant is entitled to judgment as a matter of law as to plaintiff's race discrimination claims based on the length of his breaks, his work assignment in the sun, his assignment to a trainer with less experience, and monitoring by management.

With regard to his demotion from the forklift position in 2002, the court finds that plaintiff has not shown a prima facie case of discrimination. In order to establish a prima facie case of discrimination with regard to his demotion, plaintiff must show: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)(citations omitted). Defendant contends that plaintiff cannot show that a similarly situated white employee was treated more favorably.

> To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects . . . . In determining whether employees are similarly situated . . . it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.

*Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(internal quotations and citations omitted).

Defendant has presented evidence that plaintiff was removed from the forklift position after he backed into a ladder. (Doc. 28, Ex. 1 ¶ 14-15.) Moreover, defendant has presented evidence that similarly situated white employees received the same treatment for similar accidents. (*Id*. ¶ 16.) Plaintiff has not presented evidence of any white employee involved in a similar incident that defendant treated more favorably.

Based on the record, the court finds that plaintiff cannot establish a prima facie case of discrimination with regard to his removal from the forklift position in 2002. Therefore, the court finds that plaintiff cannot establish a prima facie of race discrimination with regard to his removal from the forklift position in 2002, and defendant's Motion for Summary Judgment as to that claim is due to be granted.

The court notes that, even if it were to assume that plaintiff could establish a prima facie case of race discrimination with regard to his removal from the forklift position in 2002, defendant's Motion for Summary Judgment would still be granted as plaintiff has not established that defendant's articulated reason for its decision to remove him for the forklift position is unworthy of credence. Defendant contends that plaintiff was removed from the forklift position because of his "unsafe practices" after he backed his forklift into a ladder on which another employee was standing. (*Id*. ¶ 15.) Plaintiff has presented no evidence to dispute defendant's articulated reason. Therefore, even if the court assumed a prima facie case of discrimination with regard to the 2002 demotion, defendant's Motion for Summary Judgment would still be granted.

10

**B. WAGES**

Plaintiff alleges that he was paid less than a similarly-situated white employee, Jessie Salmons.[4]  (Doc. 4 ¶¶ 20-21.)  Defendant argues that Salmons was a welder and performed some welding duties, along with cleaning duties.  Therefore, defendant paid him a higher rate of pay based on his welding responsibilities.  Plaintiff was not a welder and performed no welding duties.

"To state a prima facie case of intentional discrimination in compensation, a plaintiff must establish that (1) [he] belongs to a racial minority; (2) [he] received low wages; (3) similarly situated comparators outside the protected class received higher compensation; and (4) [he] was qualified to receive the higher wage." *Cooper v. Southern Co.*, 390 F.3d 695, 734-35 (11th Cir. 2004)(citing *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992); *MacPherson v. Univ. of Montevallo*, 922 F.2d 766, 774 (11th Cir. 1991)).  "The comparators must perform jobs similar to the plaintiff's; thus, the plaintiff must show that, in [his] job, [he] "shared the same type of tasks" as the comparators."  *Id.* at 735.

The court finds that plaintiff and Salmons are not similarly situated for purposes of establishing a prima facie case of wage discrimination.  Salmons was a welder and plaintiff was not.  Plaintiff has failed to identify any other white employee he contends was paid more

---

[4]In his Complaint, plaintiff identifies his comparator as "Jessie Solomon." (*See* doc. 4 ¶ 20.)  However, it appears that "Jesse Salmons" is this employee's correct name. Therefore, for purposes of this decision, the court will refer to plaintiff's comparator as "Jesse Salmons."

11

for similar work not including welding. Therefore, the court finds that plaintiff has not demonstrated a prima facie case of race discrimination with regard to his wages, and defendant's Motion for Summary Judgment is due to be granted.

## C. DISCIPLINE

Plaintiff alleges that he was disciplined more severely than similarly situated white employees when he was demoted from forklift operator in 2002, when he was suspended after an altercation with a white employee in 2003, and when he was terminated in 2004. (Doc. 4 ¶¶ 25, 28, 29.)

### 1. 2002 Demotion

For the reasons set forth above, the court finds that plaintiff has not demonstrated a prima facie case of discrimination with regard to his 2002 demotion or that the defendant's articulated reason for his demotion is pretextual. Therefore, defendant's Motion for Summary Judgment as to this claim is due to be granted.

### 2. 2003 Suspension

Defendant has presented evidence that plaintiff was compensated for his time away from work during the suspension and that he "lost no money as a result of the discipline for the incident." (Doc. 28, Ex. 1 ¶ 12.) Plaintiff has presented no evidence that the 2003 suspension was a "***serious and material*** change in the terms, conditions, and privileges of [his] employment." *Davis*, 245 F.3d at 1239 (emphasis in original). The court finds that plaintiff's suspension, under the circumstances, does not constitute an adverse employment

action. *See Embry v. Callahan Eye Foundation Hospital*, 147 Fed. Appx. 819, 829, 2005 WL 2009046, *8 (11th Cir. 2005)(In an unpublished opinion, the Eleventh Circuit held that a suspension that cost plaintiff $88.73 did not constitute "'a serious and material change in the terms, conditions, or privileges of employment.'" (quoting *Davis*, 245 F.3d at 1239))(emphasis omitted).

Therefore, defendant's Motion for Summary Judgment as to plaintiff's discriminatory discipline claim based on his 2003 suspension is due to be granted and such claim is due to be dismissed.

### 3. Termination

Plaintiff alleges that he was "discharged on August 16, 2004, for alleged poor performance in painting a trailer; while white employees who allegedly engage[d] in poor performance in painting trailers were not terminated." (Doc. 4 ¶ 29.) As set forth above, plaintiff and his white co-worker were terminated for poor work performance in painting a trailer. Plaintiff has not, and cannot, prove that he was treated differently than similarly situated white employees under the circumstances. *See Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312, 1322-23 (M.D. Ala. 1998)(plaintiff could not show that she was treated differently when comparator, who was involved in altercation with plaintiff, received the same adverse employment action). Therefore, the court finds that plaintiff cannot establish a prima facie case of discrimination with regard to his termination.

Moreover, even if the court were to assume that plaintiff could present a prima facie case of discrimination, nothing in the record indicates that defendant's articulated reason for his termination – his poor work performance – is false or that plaintiff's race was the real reason for his termination. Therefore, defendant's Motion for Summary Judgment is due to be granted and plaintiff's race discrimination claim based on his termination is due to be dismissed.

## B. RETALIATION

Plaintiff alleges the same adverse employment actions set forth above, were motivated by retaliation as well as race discrimination. For the reasons set forth above, the court finds that plaintiff cannot establish a disputed issue of fact with regard to any claimed retaliation; therefore, defendant is entitled to judgment as a matter of law as to plaintiff's retaliation claims.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this the 8th day of June, 2006.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE